UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GEORGE BAZINET, JR.,

                Plaintiff,

-vs-                                                 Case No. 2:11-cv-61-FtM-29SPC

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This matter comes before the Court on Plaintiff George Bazinet, Jr.'s Complaint (Doc. #1), filed on February 14, 2011, seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's claim for disability insurance. The Plaintiff filed his Memorandum of Law in support of the Complaint (Doc. #17) on September 14, 2011. The Commissioner filed the Memorandum of Law in support of the Commissioner's decision (Doc. #23) on December 14, 2011. Thus, the Motion is now ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

## FACTS

### *Procedural History*

The Plaintiff previously filed an application for a period of disability and disability insurance

benefits on April 13, 2007, alleging an initial onset disability date of September 1, 2001. (Tr. 12). The claim was denied initially on August 6, 2007, and upon reconsideration on February 29, 2008. (Tr. 12). The Plaintiff subsequently filed a Request for Hearing before an ALJ. (Tr. 12). ALJ Mary Brennan held a hearing in Fort Lauderdale, Florida, and the Plaintiff appeared by video from Fort Myers, Florida. (Tr. 12). ALJ Brennan issued an unfavorable decision on August 4, 2009. (Tr. 12-20). The Appeals Council denied the Plaintiff's Request for Review on January 6, 2011. (Tr. 1-5). Therefore, the decision of the Commissioner became final. Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint for review with this Court under 42 U.S.C. § 405(g) on September 14, 2011. (Doc. #1).

### *Plaintiff's History*

The Plaintiff was born on December 22, 1944, and was sixty-four (64) years of age at the time of the Commissioner's decision on August 4, 2009. (Tr. 25, 103). The Plaintiff has an associate's degree. (Tr. 25). The Plaintiff's past work experience includes work as a computer programmer/analyst. (Tr. 26). The Plaintiff alleges an inability to work due to obesity, hypertension, high cholesterol, acid reflux disease, bulging spinal discs, and colon problems. (Tr. 122, 227).

### *Hearing Testimony*

A hearing was held before an ALJ on June 5, 2009, at which the Plaintiff testified. (Tr. 21-38). Plaintiff testified that he has an Associate of Arts degree in computer science (COBOL programming), and has no other licensing or certifications. (Tr. 25). He testified that he is able to drive if he takes frequent rest stops (Tr. 26) and is able to perform all daily living activities with sufficient time as long nothing is placed above shoulder level. (Tr. 30).

Plaintiff testified that he last worked in September 2001. (Tr. 26). He alleged that he took

an early retirement because he was stressed out, having panic attacks, and thought he was going to have a nervous breakdown. (Tr. 26). After leaving that job, Plaintiff attempted to find another job, but was unsuccessful. (Tr. 26). Plaintiff testified that the programming language in which he is trained has become outdated, and finding work in that area is very difficult. (Tr. 26, 32). He is unable to do different work now because he has trouble with his right hand due to carpal tunnel syndrome and bad nerves. (Tr. 26-27).

At the time that Plaintiff last worked, he had anxiety, problems with memory, and other health problems. (Tr. 32). Various infections and pancreatitis caused him to spend fifteen days in the hospital and much more time in rehabilitation. (Tr. 32). Plaintiff testified that he has a compromised immune system. (Tr. 32). He testified that when he was still working, he began having nerve problems. (Tr. 33). Because of these nerve problems, Plaintiff started losing concentration and sleeping erratically. (Tr. 34). This caused problems at work and led to his departure. (Tr. 35).

At the hearing before the ALJ, Donna Taylor, VE, testified that Plaintiff's job was a combination of two jobs: computer programmer, a sedentary job with a specific vocational preparation ("SVP") level of 7; and systems analyst, also a sedentary job with an SVP of 7. (Tr. 36). The ALJ asked the VE to assume that Plaintiff had the ability to perform light work with occasional overhead reaching. (Tr. 36). The VE testified that with those limitations, the Plaintiff would be able to perform his past work. (Tr. 36). The ALJ next asked the VE to assume that Plaintiff was limited to sedentary work with occasional overhead reaching and frequent handling and fingering. (Tr. 36). The VE testified that if this work were performed at a sedentary level, the Plaintiff would be able to perform his past relevant work as generally performed; however, the VE also noted that the way

an early retirement because he was stressed out, having panic attacks, and thought he was going to have a nervous breakdown. (Tr. 26). After leaving that job, Plaintiff attempted to find another job, but was unsuccessful. (Tr. 26). Plaintiff testified that the programming language in which he is trained has become outdated, and finding work in that area is very difficult. (Tr. 26, 32). He is unable to do different work now because he has trouble with his right hand due to carpal tunnel syndrome and bad nerves. (Tr. 26-27).

At the time that Plaintiff last worked, he had anxiety, problems with memory, and other health problems. (Tr. 32). Various infections and pancreatitis caused him to spend fifteen days in the hospital and much more time in rehabilitation. (Tr. 32). Plaintiff testified that he has a compromised immune system. (Tr. 32). He testified that when he was still working, he began having nerve problems. (Tr. 33). Because of these nerve problems, Plaintiff started losing concentration and sleeping erratically. (Tr. 34). This caused problems at work and led to his departure. (Tr. 35).

At the hearing before the ALJ, Donna Taylor, VE, testified that Plaintiff's job was a combination of two jobs: computer programmer, a sedentary job with a specific vocational preparation ("SVP") level of 7; and systems analyst, also a sedentary job with an SVP of 7. (Tr. 36). The ALJ asked the VE to assume that Plaintiff had the ability to perform light work with occasional overhead reaching. (Tr. 36). The VE testified that with those limitations, the Plaintiff would be able to perform his past work. (Tr. 36). The ALJ next asked the VE to assume that Plaintiff was limited to sedentary work with occasional overhead reaching and frequent handling and fingering. (Tr. 36). The VE testified that if this work were performed at a sedentary level, the Plaintiff would be able to perform his past relevant work as generally performed; however, the VE also noted that the way

Plaintiff actually performed his job was at a light level. (Tr. 36). The VE testified that if an individual of Plaintiff's age, education, and experience were limited to simple, routine repetitive tasks, he would be unable to perform the Plaintiff's past relevant work. (Tr. 36). Finally, the VE testified that an individual who is constantly limited in his ability to complete a normal workday of a work week without interruptions from psychiatric-based symptoms would not be able to perform Plaintiff's past relevant work. (Tr. 37).

*Medical History*

Plaintiff has been seeing James Villotti, M.D., since 2002. (Tr. 301-99, 423-31, 626-56). Dr. Villotti has repeatedly noted that Plaintiff suffered from a number of impairments, including obesity, colon cancer, carotid artery disease, sleep apnea, homocysteinuria, hyperuricemia, gastroesophageal reflux disease, and neck C8-T1 radiculopathy. (Tr. 313). Dr. Villotti has opined that Plaintiff can only stand or walk for a total of less than thirty minutes in an eight-hour workday and must alternate between sitting and standing at will in order to relieve pain and discomfort. (Tr. 624). He cannot climb, stoop, kneel, crouch, or crawl, and can balance for only one-third of a workday. (Tr. 624). Additionally, he cannot reach in all directions and feel, and his handling is limited to two-thirds of a workday and his fingering to one-third. (Tr. 624). Dr. Villotti believes that Plaintiff must break every ten minutes in order to change positions. (Tr. 624). He opined that due to Plaintiff's extreme anxiety, he has several limitations that constantly limit his concentration; ability to follow; remember, understand, and carry out simple instructions; use judgment; or respond to supervision and coworkers in usual work situations. (Tr. 625). Dr. Villotti further opined that Plaintiff's condition has existed since September 1, 2001, and that while Plaintiff's physical impairments currently meet or equal the criteria for the listing contained in 20 C.F.R. Pt. 404, Subpt.

P, App. 1, § 1.04, they did not in September 2001. (Tr. 623, 625).

Beginning in 2008, Plaintiff began seeing Manuel Gallego, M.D., for treatment of his mental problems. (Tr. 467, 606-14). Dr. Gallego's treatment notes indicate that Plaintiff suffered from anxiety, panic attacks, and other mental problems. (Tr. 606-14). Dr. Gallego indicated that Plaintiff has suffered from this condition since September 1, 2001. (Tr. 620). He stated that Plaintiff suffered from marked limitations in his ability to understand, remember, and carry out detailed instructions, in his ability to maintain attention and concentration for extended periods, in his ability to work in coordination with or proximity to others without being distracted by them, in his ability to accept instructions and respond appropriately to criticism from supervisors, and in his ability to respond appropriately to changes in the work setting. (Tr. 619-20). He also opined that Plaintiff suffers from a number of moderate mental limitations and is unable to cope with stress. (Tr. 619-20).

Plaintiff has been treated by Candis Jackson, a licensed mental health counselor, since February 18, 2008. (Tr. 647). Since that date, Plaintiff has seen Ms. Jackson at least fifteen times. (Tr. 647). Ms. Jackson opined that Plaintiff suffered from post-traumatic stress disorder, generalized anxiety disorder, panic disorder, and major depressive disorder. (Tr. 647, 659, 665). She has noted that Plaintiff suffers from medical conditions which aggravate his depression and anxiety: he is 100 pounds overweight which causes fatigue; he has a history of bladder cancer, bulging discs, scoliosis, carpal tunnel syndrom, high blood pressure, and ulcerated colitis; he constantly talks about his bowels and bladder. (Tr. 658-59). She has opined that Plaintiff has several constant, marked, and moderate limitations in understanding and memory, sustained concentration and persistence, and ability to interact socially and adopt to a work environment. (Tr. 664-65).

*Administrative Law Judge's Opinion*

The ALJ issued her decision denying benefits on August 4, 2009. (Tr. 20). She concluded that the Plaintiff was not disabled from September 1, 2001, through December 31, 2006, the date last insured. (Tr. 14). She makes specific citations to the record as she considers the Plaintiff's physical and mental health.

Although Plaintiff did not provide any documentation to substantiate a mental disorder prior to the date last insured, the ALJ considered treatment notes for periods after the date last insured, as well as evidence received into the record after the reconsideration determination. (Tr. 15). She gave great consideration to the medical records dated prior to the date last insured, walking through Plaintiff's treatment history with Jay Raja, M.D., between September 12, 2002, and March 29, 2007, and James Villotti, M.D., since April 10, 2002, as well as his visits to the Englewood Community Hospital and to John Hand, M.D., both in 2006, and to Restore Physical Therapy in 2006 and 2007. (Tr. 17-18). The ALJ stated, "[there] is no further record of treatment for the Plaintiff's alleged impairments prior to his date last insured." (Tr. 18). The ALJ considered clinical records and tests as well as the Plaintiff's daily activities. (Tr. 18). She also considered both the testimony of Plaintiff and of the VE when issuing her decision. (Tr. 18-19).

The ALJ's specific findings were that the Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2006. (Tr. 14). The Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of September 1, 2001, through his date last insured of December 31, 2006 (20 C.F.R. 404.1520(b) and 404.1571 *et seq.*). (Tr. 14.). The ALJ found that through the date last insured, the Plaintiff had the following severe combination of impairments: cervical radiculopathy, CTS (carpal tunnel syndrome), GERD (gastro

esophageal reflux), and obesity (20 C.F.R. 404.152(c)). (Tr. 14). Through the date last insured, the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526). (Tr. 15). After careful consideration of the entire record, the ALJ found that, through the date last insured, the claimant has the residual functional capacity to perform the exertional demands of a wide range of light work, or work which requires maximum lifting of twenty pounds and frequent lifting of up to ten pounds (20 C.F.R. 404.1567). (Tr. 15). The ALJ found the evidence supports a finding that Plaintiff was not able to lift and carry more than twenty pounds or more than ten pounds on a regular basis. (Tr. 15). The Plaintiff could sit six hours in an eight-hour workday and stand/walk six hours in an eight-hour day and that the Plaintiff could occasionally reach about the shoulders with both arms/hands and had no mental limitations established. (Tr. 15). The ALJ found that through the date last insured, the Plaintiff's past relevant work as a computer programmer/analyst did not require the performance of work-related activities precluded by the his residual functional capacity (20 C.F.R. 404.1565). (Tr. 15). Ultimately, the ALJ determined the Plaintiff was not under a disability as defined in the Social Security Act, at any time from September 1, 2001, the alleged onset date, through December 31, 2006, the date last insured (20 C.F.R. 404.1520(f)). (Tr. 15).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th

Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations[1] (20 C.F.R. §§ 404.1520(a), 404.920(a)). The Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838B39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

---

[1] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
Step 1. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
Step 2. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
Step 3. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.
Step 4. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

## **DISCUSSION**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505). The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy (42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505 - 404.1511). To determine whether the claimant is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff states that the ALJ committed several errors for which this case should be remanded. Specifically, Plaintiff alleges that the ALJ failed to consider Plaintiff's obesity, in violation of S.S.R. 02-1p and that the ALJ failed to consider and weigh the opinion of Plaintiff's treating physician, Dr. Gallego. The Plaintiff also alleges that the present case should be reversed and remanded for an immediate award of benefits based on the ALJ's failure to address the opinions of Plaintiff's treating physicians and based on the Medical-Vocational Guidelines.

*1. Whether Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Impairments?*

At the second step in the evaluation process, the ALJ is to "consider the medical severity of the [Plaintiff's] impairments. 20 C.F.R. § 404.1520(a)(4)(ii). When considering the severity of the

claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination "significantly limit" the claimant's "physical or mental ability to do basic work skills." Phillips v Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing C.F.R. § 404.1520(c)). At the second step, the Plaintiff bears the burden of proof that he suffers from a severe impairment or combination of impairments. Gibbs v. Barnhart, 156 Fed. Appx. 243, 246 (11th Cir. 2005). An impairment or combination of impairments is not severe if it "does not significantly limit [the plaintiff's] physical or mental ability to do basic work activities," including: (1) "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately to supervision, co-workers and usual work situations;" and (6) "[d]ealing with changes in a routine work setting." Id. (citing 20 C.F.R. § 404.1521(a),(b)). Where a claimant has alleged several impairments, the Commissioner has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled. Jones v Department of Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991). An ALJ properly considers the Plaintiff's impairments in combination if he states that the Plaintiff does not have an impairment, or combination of impairments of sufficient severity to prevent him for engaging in any substantial gainful activity. Gibbs, 156 Fed. Appx. at 246 (citing Wheeler v Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986)).

The Plaintiff contends that the ALJ erred by failing to give adequate consideration to Plaintiff's obesity. Plaintiff argues that "obesity should be considered, among other impairments, because it can cause further degradation of a claimant's physical capacity, especially in the presence of certain impairments." Pl. Br. at 9 (citing Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir.

2005)). The Government contends that the ALJ's findings were supported by substantial evidence and that the ALJ adequately considered the medical evidence surrounding the Plaintiff's obesity.

The ALJ found that the Plaintiff's obesity is a severe impairment. (Tr. 14). At the outset, the Undersigned notes that the Regulations caution against assuming that obesity necessarily exacerbates the severity of other impairments of limitations:

> [W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

SSR 02-1p. The ALJ clearly evaluated the medical evidence presented by the Plaintiff.

The ALJ observed that the Plaintiff "has very little in the way of treatment for the alleged impairments prior to the [date last insured]." (Tr. 16). Thus, the ALJ carefully considered the medical evidence, including evidence related to Plaintiff's obesity. The ALJ examined treatment notes from Jay Raja, M.D. She indicated that Dr. Raja's October 29, 2003, treatment notes show that the Plaintiff weighed 334 pounds, but that he "had a relatively normal physical exam." (Tr. 17). In her consideration of treatment notes from James Villotti, M.D., from whom Plaintiff has received routine medical treatment since April 10, 2002, the ALJ highlighted that "[t]reatment notes from Dr. Villotti prior to the [date last insured] do not report any sever exacerbations in the claimant's symptoms." (Tr. 17). Dr. Villotti treated Plaintiff on September 13, 2006, after Plaintiff fell while on a cruise. The ALJ notes that "[a]n assessment of the claimant's condition included obesity. . . . Treatment notes through October 9, 2006, do not report any severe exacerbations on the claimant's condition other than the injuries sustained after his fall on the cruise ship." (Tr. 17).

The burden is on Plaintiff to show how obesity resulted in any functional limitations in excess of his RFC for light work. See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004). Here, he fails to produce any medical evidence to demonstrate such limitations. The ALJ examined the medical record in its entirety ("[There] is no further record of treatment for the claimant's alleged impairments prior to his date last insured." (Tr. 18)) and considered testimony from the vocational expert, none of which indicated that Plaintiff's obesity presents a specific impairment to Plaintiff's RFC. Additionally, since the Plaintiff has weighed over 300 pounds since before the alleged disability onset date when he was working full-time (Tr. 207, 209, 211), the ALJ adequately considered Plaintiff's obesity, and her decision is supported by substantial evidence.

*2. Whether Substantial Evidence Supports the ALJ's Decision Not to Accept Dr. Gallego's Opinion?*

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527 (d); Lewis, 125 F.3d at 1439 - 1441; Sabo v. Commissioner of Social Security, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580, (11th Cir. 1991) (ALJ properly discounted treating Physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. 20 C.F.R. § 404.1527 (d)(2); Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984). Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. Morrison, 278 F. Supp. at1334.

The ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527 (e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner. 20 C.F.R. § 404.1527 (e).

Plaintiff argues that the ALJ committed reversible error by failing to weigh the opinion of

Plaintiff's treating physician, Dr. Gallego. The Undersigned disagrees. As discussed above, the ALJ noted explicitly that "the [Plaintiff] has not provided sufficient medical evidence to support his allegations of disability as far back as his date last insured." (Tr. 15). She acknowledged that "[t]he Administration has attempted to update the medical records at the initial, reconsideration, and hearing level, but has not been able to secure any medical documentation that substantiates total disability prior to his date last insured." (Tr. 15). The ALJ stated clearly,

> The [Plaintiff] has alleged multiple impairments. However, he did not mention anxiety when he initially applied for benefits. The [Plaintiff] testified that he stopped working due to "panic attacks and stress", but there is no record of treatment for these symptoms. The [Plaintiff] also testified that he had mental health treatment in Orlando, but the records were "so old", they may not be available. The main issue here is the [date last insured] and the [Plaintiff] has not provided any type of documentation that substantiates a mental disorder prior to the date last insured. The [Plaintiff] stated that he resumed treatment in 2008,[2] but this is not sufficient to establish a severe mental impairment during the period in question. The undersigned finds that there is no basis to establish a mental impairment prior to the [Plaintiff]'s date last insured.

(Tr. 15). Notwithstanding this finding, the ALJ scoured the Plaintiff's medical records from the relevant time period and considered the additional medical evidence, including the treatment records from Dr. Gallego.

As the Plaintiff concedes, psychiatrist Dr. Gallego did not even examine Plaintiff until two years after the date last insured. Thus, though Dr. Gallego indicated that Plaintiff has been disabled since September 1, 2001, his opinion is based largely on Plaintiff's own representations and not the Doctor's first-hand impressions. Furthermore, Dr. Gallego merely checked a box indicating the length of this disability, without providing any additional basis for his belief that the Plaintiff's

---

[2] Plaintiff began treatment with Dr. Gallego in 2008. (Pl. Br. at 12).

condition has persisted since September of 2001. (Tr. 486, 615, 617-18, 620). Nevertheless, the ALJ expressly considered the evidence submitted after the reconsideration determination on February 29, 2008, which includes the treatment notes from Dr. Gallego. (Tr. 19, 40, 466-666). The ALJ concluded that the "evidence received into the record after the reconsideration determination did not provide any new or material information that would alter any findings about the [Plaintiff]'s mental residual functional capacity." (Tr. 15). Additionally, she did not find that the new evidence would alter any findings about Plaintiff's overall "residual functional capacity prior to his [date last insured]." (Tr. 19).

This finding is supported by the ALJ's thorough examination of the medical records from the relevant time period. For example, the ALJ noted that

> [p]rior to his [date last insured], the [Plaintiff] had the following mental limitations: The first functional area is activities of daily living. In this area, the [Plaintiff] had no limitation. The next functional area is social functioning. In this area, the [Plaintiff had no limitation. The third functional area is concentration, persistence, or pace. In this area, the [Plaintiff] has mild limitation. The fourth functional area is episodes of decompensation. In this area, the [Plaintiff] had experienced no episodes of decompensation. Because the [Plaintiff]'s alleged mental impairment caused no more than "mild" limitation in any of the first three functional areas and "no" limitation in the fourth area, it is "nonsevere."

(Tr. 15). The ALJ also considered the opinion of the State Agency Physician and gave it significant weight because "he provided specific reasons for the opinion about the [Plaintiff]'s mental residual functional capacity, showing that the opinion was grounded in the evidence in the case record (or lack thereof), including careful consideration of the [Plaintiff]'s allegations about his symptoms and limitations." (Tr. 15).

The ALJ considered the Plaintiff's testimony about his mental impairments: "The [Plaintiff]

testified to problems he was having in the present and not to the problems he was having prior to his [date last insured]. The [Plaintiff] testified that he stopped working in 2001 due to stress and anxiety. The [Plaintiff] testified that he was having panic attacks." (Tr. 18). Nevertheless, the ALJ found that the Plaintiff's "allegations are disproportionate to the clinic records and tests." (Tr. 18). She noted that "[t]here is *no* record for treatment of a mental disorder during the period in question." (Tr. 18, emphasis added).

Thus, the Undersigned recommends that ALJ did not err. She considered all of the medical evidence prior to the date last insured. Additionally, even though the Plaintiff did not begin seeing Dr. Gallego until years after the DLI, the ALJ gave those records consideration and found that they did not provide any new or material information that would alter any findings.

### *3. Whether the ALJ Gave the Opinions of Plaintiff's Treating Physicians Appropriate Weight*

Plaintiff argues that the ALJ failed to consider the opinions of Drs. Villotti and Gallego, and that as such, the Court should reverse and remand for an immediate award of benefits. As discussed above, the ALJ appropriately considered the opinion of Dr. Gallego. Similarly, the Undersigned recommends that the ALJ's consideration of Dr. Villotti's opinions to be without error.

The Social Security Regulations make clear that an opinion that a claimant is disabled or cannot work is not given special weight or significance because this is an issue reserved to the Commissioner. 20 C.F.R. 404.1527(e)(1)-(3). Additionally, the "task of determining a claimant's ability to work is within the province of the ALJ, not a doctor." Cooper v. Astrue, 373 Fed. Appx. 961, 962 (11th Cir. 2010) (per curiam). The ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the

statutory definition of disability. 20 C.F.R. § 404.1527 (e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner. 20 C.F.R. § 404.1527 (e).

As stated above, Dr. Gallego's opinion that Plaintiff has been disabled since September 1, 2001, is expressed solely in the form of a checkbox without additional supporting evidence. Thus, Dr. Gallego's opinion that Plaintiff met the mental Listings is an administrative finding which is reserved for the Commissioner. Therefore, the ALJ properly discounted the checkbox forms completed by Dr. Gallego in 2008 and 2009.

Plaintiff contends that the ALJ failed to consider the opinion of Dr. Villotti who had treated the Plaintiff for several years and who had stated that the Plaintiff can stand or walk for less than thirty minutes in an eight-hour workday. The ALJ considered the medical evidence from Dr. Villotti. She noted that the Plaintiff received "routine medical treatment" from Dr. Villotti since April 10, 2002. (Tr. 17). Additionally she observed that "[t]reatment notes from Dr. Villotti prior to the [date last insured] do not report any severe exacerbations in the [Plaintiff]'s symptoms." (Tr. 17). She discusses the results of several tests and examinations performed by Dr. Villotti on Plaintiff throughout 2006. (Tr. 17). The ALJ found that "the totality of the evidence in the record does not persuade the undersigned that he was precluded from all types and degrees of work activities prior to his date last insured. The undersigned cannot find sufficient evidence to preclude the [Plaintiff]'s ability to perform a wide range fo light exertional activities." (Tr. 18).

The ALJ did not err by refusing to adopt Dr. Villotti's October 2008 indication that Plaintiff

was limited to less than thirty minutes of standing or walking in an eight-hour workday. Dr. Villotti did not explain the basis of this limitation, nor did he relate it back to the relevant period from September 1, 2001, to December 31, 2006. (Tr. 624). The ALJ may consider the opinion of a treating physician against other relevant evidence. For example, in addition to all the medical evidence, the ALJ also noted that "[t]he [Plaintiff] reported that he takes care of his personal needs; drives; takes out the trash; cooks; does excercises for his back; and goes out to eat or to the movies once a week." (Tr. 18). As with Dr. Gallego's opinion, Dr. Villotti's checkbox indication that Plaintiff had been disabled since September 1, 2001, (Tr. 625) is not entitled to any special weight or significance, and thus the ALJ did not err by not affording it any.

### *4. Whether the Medical-Vocational Guidelines Direct a Finding that Plaintiff is Disabled*

Plaintiff contends that Medical-Vocational Rule 202.06 directs a finding at Step Five of the sequential evaluation series that Plaintiff is disabled because he is of advanced age, has a high school education or more, does not have direct entry into skilled work, and does not have any transferrable skills to other jobs. (Pl. Br. at 15). However, at Step Four the ALJ found that Plaintiff was able to perform his past relevant work. It is only once the ALJ finds that a claimant cannot return to his or her prior work, that the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Id. at 1558; Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. Foote, 67 F.3d at 1558.

In this instance, the ALJ did not rely on the Grids to reach her conclusions, but instead called

a Vocational Expert to testify at the hearing. The ALJ states,

> The VE, Ms. Taylor, testified that the [Plaintiff]'s past work is described as light, skilled work in the <u>Dictionary of Occupational Titles</u> (DOT). Ms. Taylor testified that the [Plaintiff]'s past work is the type of work that was within the range of his residual functional capacity, and he was able to perform his past work activity. The undersigned agrees with the opinion of the VE and finds that pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in DOT. In comparing the residual functional capacity, the [Plaintiff] had as of the date last insured with the physical and mental demands of this work, the undersigned finds that the [Plaintiff] was able to perform it as it was actually and generally performed.

(Tr. 19). Substantial evidence supports the ALJ's decision that the Plaintiff was not disabled during the relevant period from September 1, 2001, to December 31, 2006. Thus, the Medical-Vocational Guidelines do not necessitate a reversal of the ALJ's decision.

Accordingly, it is now

**RECOMMENDED:**

The decision of the Commissioner should be **AFFIRMED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this   25th   day of January, 2012.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record